**Adrian ROUSE, Plaintiff,**

v.

**Bayse WILSON, et al., Defendants.**

**Civ. A. No. 85–755(R).**

United States District Court,
W.D. Virginia,
Roanoke Division.

Dec. 2, 1987.

Tonita M. Foster, Roanoke, Va., for plaintiff.

Phyllis Katz, Asst. Atty. Gen., Richmond, Va., Jean B. Arnold, Blacksburg, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiff Adrian Rouse brought this action though his mother and next friend Kay Rouse (hereinafter "the plaintiff"), appealing the decision of the state Reviewing Officer's denial of her request for private school placement and tuition expenses reimbursement. The defendants who remain in the case are Bayse Wilson and Dr. Eddie Kolb (hereinafter "the defendant"), both employees of the Roanoke County Schools. Plaintiff contends that the defendant was not providing Adrian with a free appropriate public education (FAPE) as required by the Education For All Handicapped Children Act of 1975 (hereinafter "the Act"), 20 U.S.C. §§ 1401–1461. The case is before this court for judicial review pursuant to § 1415(e)(2). The parties submitted briefs in support of their respective positions and the Virginia Department for Rights of the Disabled filed an *amicus curiae* brief. For the reasons set forth below, the court finds in favor of the defendant because the defendant offered plaintiff's son a FAPE at the public school, Mountain View. Thus, plaintiff's request for tuition expenses at the private Achievement Center are denied.

### BACKGROUND

The relevant facts of the case are as follows. Plaintiff's son, Adrian, is a thirteen year old boy who first entered the Roanoke school system in 1979 as a kindergarten student. Adrian graduated to the first grade at Mountain View Elementary School. During that year, plaintiff became concerned about Adrian's slow reading progress. Evaluations and testing were requested by plaintiff and performed by the school during the 1980–81 school year. On March 3, 1981, the Roanoke County Eligibility Committee concluded Adrian possessed above average intelligence but was hyperactive. The Committee recommended a behavior modification program.

After Adrian received all D's in the first grade, a second Committee meeting was held on June 19. Plaintiff did not attend this meeting. The Committee, without conducting new tests, found Adrian qualified for special education because of his behavioral adjustment problems. Plaintiff objected by letter to this assessment of her son, and had him tested by a private psychologist. The psychologist determined Adrian was a "learning disabled child not functioning at his expectancy." Plaintiff requested her son be placed in a learning disabled class. Defendant refused, informing plaintiff that Adrian was slated to attend a class for emotionally disturbed children.

In September, 1981, plaintiff transferred her son to a private school. Two months later, plaintiff placed Adrian in the private Achievement Center, where he remained for that school school year. In June 1982, plaintiff requested tuition reimbursement for the 1981–82 school year. Her request was denied by defendant on the grounds that defendant had offered Adrian appropriate special education services within the public school system.

During the summer of 1982, Adrian attended defendant's summer learning disability program. Upon the conclusion of this program, the Committee held a third meeting. The Committee determined Adrian was eligible for special education as a learning disabled child. The next month, the Committee recommended that defendant fund plaintiff's tuition costs at the Achievement Center for the 1982–83 school year. Also at this time, an individualized education program (IEP) was developed for Adrian.

At the end of the 1982–83 school year, an annual review of Adrian's performance was conducted. Adrian's academic performance was adjudged as above average for his grade level, but commensurate with his tested intellectual ability. Adrian, however, displayed continuing problems of attention, distractibility, and impulsive behavior. The Committee again recommended funding Adrian at the Achievement Center for the 1983–84 school year. The minutes of the meeting contained in the administrative record reveal that this decision was to be considered as working "toward a transition back to public school programming for 1984–85."

In the spring of 1984, testing performed on Adrian by the Achievement Center demonstrated he was reading at a seventh grade level. In math and spelling, he achieved approximately a fourth grade level. Overall, while Adrian was progressing, his teachers recommended his continued placement in a self-contained learning disability class.

On May 21, 1984 an Eligibility Committee met to determine Adrian's placement for the 1984–85 school year. Plaintiff attended this meeting. The Committee found Adrian needed special education through a self-contained learning disability program. Such a program, the Committee determined, could be provided by the public Mountain View School. An IEP Committee was scheduled to develop a program specific to Adrian's needs.

On May 31, the IEP Committee and Adrian's anticipated teacher, Mrs. Weikel, met with plaintiff and presented a proposed IEP. The plan provided for a self-contained learning disabilities class taught by Mrs. Weikel at the Mountain View School, and small group and individual guidance at least thirty minutes every two weeks. Plaintiff did not approve the IEP at this meeting, and requested time to review the proposal.

On July 2, plaintiff wrote defendant listing specific objections to the IEP including an objection to any change of school. Defendant responded three days later stating a school other than Mountain View might be feasible, however, defendant did not intend to fund private placement for Adrian. Plaintiff was also advised of her due process rights for review of defendant's decision at this time.

Plaintiff wrote defendant that she would be out of town but would reply within two weeks of her return. On July 24, defendant wrote again offering to address plaintiff's concerns with the IEP and to investigate alternative schools. Plaintiff responded on August 9, and a meeting was arranged. No agreement was reached.

Plaintiff advised defendant on August 27 that she was seeking legal advice as she could not agree to defendant's proposed IEP. Defendant again offered to discuss possible changes in the IEP if she so desired. Plaintiff filed for a due process hearing on September 11, after the beginning of the 1984–85 school year. After some delay, the hearing commenced on January 11, 1985, and a request for tuition expenses was subsequently made. During the 1984–85 school year, Adrian remained at the private Achievement Center.

On May 20, 1985, the Hearing Officer presented a detailed report based on 3 days of hearings. He concluded that Adrian's placement at the Mountain View School was appropriate and the IEP for Adrian prepared by defendant afforded the child a FAPE. Thus, plaintiff should not receive tuition reimbursement for his attendance at a private school.

Plaintiff appealed this decision. A state Reviewing Officer also concluded that plaintiff's request for tuition reimbursement should be denied. His decision was not based on determining Adrian's "then current educational placement". The Reviewing Officer focused on what was the "appropriate" placement of Adrian, relying on the recently decided case, *Town of Burlington v. Department of Education for the Commonwealth of Massachusetts*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

Plaintiff appealed the denial of tuition to this court under § 1415(e)(2) claiming defendant cannot provide a free appropriate public education for her son at the public

Mountain View School and therefore, Adrian's attendance at the private Achievement Center should be funded at public expense.

## DISCUSSION

Under the Act, federal money is provided to participating state and local education agencies which fulfill the procedural and substantive requirements of the Act. *See Hendrick Hudson District Board of Education v. Rowley*, 458 U.S. 176, 179–84, 102 S.Ct. 3034, 3037–39, 73 L.Ed.2d 690 (1982). The purpose of the Act is

> to assume that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the right of handicapped children and their parents or guardians are protected. 20 U.S.C. § 1400(c) (1982).

A free appropriate public education (FAPE) is defined as:

> special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with [an] individualized education program. 20 U.S.C. § 1401(18) (1982).

A FAPE is provided through an "individualized education program" (IEP). 20 U.S.C. § 1401(19) (1982). The Supreme Court describes an IEP as

> a comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs. § 1401(19). The IEP is to be developed jointly by a school official qualified in special education, the child's teacher, the parents, or guardian, and, where appropriate, the child. In several places, the Act emphasizes the participation of the parents in developing the child's education program and assessing the effectiveness. See §§ 1400(c),

1401(19), 1412(7), 1415(b)(1)(A), (C), (D), (E), and 1415(b)(2); 34 CFR § 300, 345 (1984).

*Burlington*, 471 U.S. 359, 368, 105 S.Ct. 1996, 2002.

The Act does not insist that the school give a handicapped child the best education possible. Rather, the school must provide "personalized instruction with sufficient support services to enable the handicapped child to benefit educationally from that instruction." *Hessler v. State Board of Education*, 700 F.2d 134, 139 (4th Cir.1983). *See Rowley*, 458 U.S. 176, 203, 102 S.Ct. 3034, 3049.

The Act provides for a due process hearing to assess any complaints with the IEP, and also provides for judicial review of the administrative decision at the request of an aggrieved party. The court has the authority to review the administrative record, hear additional evidence and make a decision based on a preponderance of the evidence. 20 U.S.C. § 1415(e)(2) (1982). This review involves two questions:

> [F]irst has the State complied with the procedures set forth in the Act? And second, is the individualized education program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?

*Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3051.

The court finds that under the *Rowley* test, the defendant has complied procedurally and substantively with the Act. First, as to the State's compliance, the Commonwealth of Virginia has adopted a plan as required by the Act. *See* Va.Code §§ 22.1–213 to 221 (1985) and Regulations Governing Special Education Programs for Handicapped Children and Youth in Virginia. *See Rowley*, 458 U.S. 176, 206 n. 27, 102 S.Ct. 3034, 3051 n. 27.

Second, as to the proposed IEP developed for Adrian, plaintiff claims that the IEP is defective in that she did not participate in its development and the IEP was not sufficiently tailored to address Adrian's long and short term needs.

The court, upon reviewing the record, finds the proposed IEP meets the requirements of the Act and conforms with specifications in § 1401(19). As to Adrian, both parties agree that he is a learning disabled child in need of special education. *See* § 1401(15). The parties, however, do not agree how and where Adrian should receive special instruction designed to meet his unique needs.

On May 31, 1984, the IEP was prepared at a meeting attended by both plaintiff and Adrian's anticipated teacher, Mrs. Weikel. Plaintiff was offered several subsequent opportunities to identify and address her objections to the IEP. Plaintiff was slow to respond even though the new school year rapidly approached. The Supreme Court recognized in *Burlington* that the Act's cooperative approach "would not always produce a consensus between the school officials and the parents." 471 U.S. 359, 368, 105 S.Ct. 1996, 2002. That no agreement was reached by the parties does not negate the significant fact that defendant endeavored to meet and discuss the IEP with plaintiff.[1]

Also indicative of defendant's good faith efforts to accommodate plaintiff's desires is defendant's funding of Adrian's private schooling for the past two years. The precise rationale behind the funding is unclear. The court finds defendant desired better parent-school relations; however, the court does not find that this past payment created a duty on defendant's part to continue the funding if defendant could provide an appropriate alternative. Thus, the court finds defendant's efforts to cooperate with plaintiff satisfy the Act's emphasis on parental involvement in the development of the IEP.

As to the specificity of the IEP for Adrian's needs, for several reasons, the record reveals that the proposed IEP is reasonably calculated to provide the child with educational benefits. *See Hessler.* First, one of Adrian's teachers at the Achievement Center during the 1983–84 year observed Adrian had a short attention span and difficulty finishing assigned tasks. The structured classes at Mountain View were designed to address such problems.

Second, Adrian's anticipated teacher at the Mountain View School is certified by the Virginia Department of Education to teach both learning disabled and non-handicapped children. She worked three years at the private Achievement Center in addition to other experience with learning disabled children. Her classes are small in size providing a very structured learning environment, limited distractions and a lower student-teacher ratio than in a regular classroom. Two teachers at the Achievement Center also had recommended Adrian be placed in a self-contained learning disabilities class. The Hearing Officer found it significant that neither teacher specifically stated that such a class could only be found at the Achievement Center.

Third, one of the requirements of the Act is that the handicapped child be educated in the least restrictive environment. *See* 20 U.S.C. § 1412(5) (1982). At the private Achievement Center, all the children are learning disabled. This is a more restrictive setting than a public school environment.

Finally, the ultimate goal of the Achievement Center is to integrate its students into regular school although each child is permitted to progress at his own pace. Similarly, the goals contained in the proposed IEP include mainstreaming Adrian into the fifth grade. Plaintiff complains the IEP's goals for Adrian are vague and general enough to fit any fifth grader. Plaintiff appears to fear that Adrian will simply be placed in public school to sink or swim, and future plans would be developed

---

1. The Supreme Court also noted in *Burlington* that Congress incorporated "procedural safeguards" in the Act, to aid in the resolution of disputes and insure full parental participation. Such safeguards include parental review of records, independent educational evaluation and recourse to an impartial due process hear- ing. *See* 471 U.S. at 368, 105 S.Ct. at 2002. Plaintiff has not claimed she was denied access to records, nor has she recently requested an independent evaluation of Adrian. Plaintiff did avail herself of the right to a due process hearing.

dependant on Adrian's progress. The court is sympathetic to plaintiff's concerns; however, the court agrees with the Hearing Officer that Mountain View's projected class schedule facilitates Adrian's transition to regular classes. For example, Adrian would have morning classes in the self-contained learning disability class. He would then attend physical education, music classes, and lunch with non-handicapped children. After lunch, Adrian would return to his special classes. Adrian would also join regular science and social studies classes once he had gained confidence among his peers and was adjudged ready by his teachers.

The court notes that Congress did not intend reviewing courts to "have a free hand to impose substantive standards of review." *Rowley,* 458 U.S. at 206, 102 S.Ct. at 3051. The education methods of the state and local school authorities must be afforded due consideration, as the Act indicates this area is their primary responsibility. *Matthews v. Davis,* 742 F.2d 825, 829 (4th Cir.1984). The preponderance of the evidence in this case indicates the assessment of the Hearing Officer and Review Officer were correct.

■ Having determined that defendant's proposed IEP offered Adrian a FAPE, the court turns to the question of tuition reimbursement. The Supreme Court addressed a similar situation in *Burlington.* In that case, the father of a handicapped child rejected a proposed IEP presented by the school, during the summer. The father then sought review under 20 U.S.C. § 1415(b)(2) by the state education bureau. A hearing originally scheduled in the summer was postponed. In mid–August, before the hearing was conducted, the father, believing the school's proposed placement was inappropriate, enrolled his son in a private school. Ultimately, the review board agreed with the father. The placement in the IEP was found to be inappropriate and the board ordered tuition reimbursement.

After a complicated procedural history, the trial court denied the tuition expenses. On appeal, the First Circuit ruled on several issues. The Supreme Court then granted certiorari on two issues: "whether the potential relief available under § 1415(e)(2) includes reimbursement to parents for private school tuition and related expenses, and whether § 1415(e)(3) bars such reimbursement to parents who reject a proposed IEP and place a child in a private school without the consent of local authorities." 471 U.S. at 367, 105 S.Ct. at 2001–2002.

The Supreme Court examined § 1415(e)(2), which provides:

[T]he court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

The Court found this section empowers the court to order tuition reimbursement if the court determines that such placement is appropriate and the proposed IEP placement is not. *Burlington,* 471 U.S. at 369, 105 S.Ct. at 2002–2003.

■ Second, the Court found parental violations of § 1415(e)(3) do not constitute a waiver of reimbursement. That section provides:

During the pendency of any proceedings conducted pursuant to [§ 1415], unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child....

The court concluded § 1415(e)(3) does not pertain to financial responsibilities, and refrained from defining the "then current educational placement." *Id.* On those facts, the court assumed the child's "then current educational placement" during the summer was the proposed IEP public school. *Id.* Thus, the father had changed his son's school from public to private.

■ In this case, however, Adrian's mother did not change her son's placement from public to private. Adrian remained at the private school he had attended for the past two years. This difference has little relevance. Each parent faced the same dilemma which concerned the Supreme

Court in *Burlington*. Review proceedings may involve months and years. *Id.* at 370, 105 S.Ct. at 2003. The parent was forced to choose between the education placement of the proposed IEP, which she believed would be detrimental to her child, or to place her child in the facility she personally considered appropriate. Plaintiff in this case chose the latter course, at her own financial risk. *Id.* at 374, 105 S.Ct. at 2005.

If upon judicial review, the school designated in the IEP is deemed inappropriate, plaintiff would be entitled to recover tuition expenses under *Burlington*. "[I]t would be an empty victory to have a court tell them several years later that they were right but that these expenditures could not in a proper case be reimbursed by the school officials." *Id.* at 370, 105 S.Ct. at 2003.

If, however, the school proposed in the IEP is found appropriate, plaintiff "would be barred from obtaining reimbursement" for tuition expenses because the defendant offered a free and appropriate education which the parent unilaterally rejected. *Id.* at 374, 105 S.Ct. at 2005; 34 CFR § 300.403 (1987).

This court construes the "then current educational placement" of Adrian to be a preliminary issue. When a disagreement arises over this "stay-put" provision, *see Linkous v. Davis*, 633 F.Supp. 1109, 1112 (W.D.Va.1986), the crux of the inquiry is the appropriateness of the proposed IEP placement. The court agrees with the State Reviewing Officer that *Burlington* marks a shift away from the mechanical status quo interpretation of the "then current education placement." *See, e.g., Stemple v. Board of Education of Prince George's County*, 623 F.2d 893 (4th Cir. 1980), *cert. denied*, 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); *but see Hall v. Board of Education of Vance County*, 774 F.2d 629, 633 (4th Cir.1985); *Linkous*, 633 F.Supp. at 1112. Therefore, plaintiff's unilateral decision to keep her child in private school does not prevent her from obtaining tuition reimbursement. Rather this court's determination that the public school alternative is appropriate bars any tuition reimbursement.

The court finds defendant complied with the procedures designed by Congress to ensure full parental participation in the development of the IEP and the administrative process. *See* 20 U.S.C. § 1415. The court finds substantively the proposed IEP was tailored to meet Adrian's unique needs and designed to provide him with educational benefits. Thus, defendant afforded Adrian a free appropriate public education.