882 F.2d 876
 55 Ed. Law Rep. 442
 Michael DEVRIES, by his parent and next friend Marjorie Ann
DeBLAAY; Marjorie A. DeBlaay, Plaintiffs-Appellants,
v.
The FAIRFAX COUNTY SCHOOL BOARD; Robert Spillane,
individually and in his capacity as Superintendent
of Fairfax County Public Schools,
Defendants-Appellees,
and
Fairfax County Board of Education Members, individually and
in their capacity as a member of the Fairfax County School
Board; Leary School Incorporated; Albert D. Leary, Jr.,
individually and in his capacity as Executive Director of
Leary School; John Davis, individually and in his capacity
as the Virginia Superintendent of Public Instruction,
Virginia Department of Education, Defendants.
 No. 88-3644.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 7, 1989.
Decided Aug. 16, 1989.
 
 Frank J. Laski (Judith A. Gran, Lisa M. Rau, Public Interest Law Center of Philadelphia, Chuck Rust-Tierney, Hirschkop, Dimuro & Mook, on brief), for plaintiffs-appellants.
 Thomas J. Cawley (Grady K. Carlson, John F. Cafferky, Hunton & Williams, on brief), for defendants-appellees.
 Before PHILLIPS and SPROUSE, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 SPROUSE, Circuit Judge:
 
 
 1
 Michael DeVries, a seventeen-year-old autistic student, through his mother,* appeals from the district court's judgment upholding the Fairfax County School Board's determination that a county vocational center located thirteen miles from his home rather than a public high school closer to his home is the "appropriate" and "least restrictive" educational environment for DeVries. We affirm.
 
 
 2
 The parties do not dispute that, because of his disability, Michael requires considerable special treatment to enable him to function in any educational environment. DeVries and the Board disagree, however, over the proper application of the Education of the Handicapped Act with respect to Michael's particular needs. DeVries insists that the Act mandates that he be "mainstreamed" by placing him in Annandale High School, a large general education school serving approximately 2,300 students with very few handicapped students. The Board contends, on the other hand, that Michael can only receive the statutorily required "appropriate public education" at the South County Vocational Center in West Potomac High School.
 
 
 3
 A state, in order to receive benefits under the Education of the Handicapped Act must demonstrate that all handicapped children in its educational programs have "the right to a free appropriate public education." 20 U.S.C. Sec. 1412(1). The state must place a handicapped child in "the least restrictive environment." 34 C.F.R. Sec. 300.552(d). The Act requires that such education be tailored to the needs of an individual handicapped child by means of an "individualized education program" ("IEP"), which must be prepared at meetings between school representatives and the child's parents. 20 U.S.C. Secs. 1401(a)(19), 1414(a)(5). Parents of handicapped children who are not satisfied with their child's IEP have a right to "an impartial due process hearing" before a hearing officer and a right to an appeal to the state educational agency. "Any party aggrieved" by the result of the administrative determinations can seek review in a state court or a federal district court. Id. at Sec. 1415(b)(2), (e)(2).
 
 
 4
 Starting in the summer of 1986, Fairfax County public school officials began developing an IEP for Michael. The initial IEP provided for his continued attendance at Leary School, a private day school for handicapped children in Fairfax County that he been attending since September 1985. Michael's mother, Ms. DeBlaay, given the opportunity to participate in developing his IEP, insisted to no avail that he be educated at Annandale High School, the public school close to his home. In the fall of 1986, a local hearing officer conducted administrative hearings to resolve the controversy between Ms. DeBlaay and the Board. The hearing officer ruled in favor of the school system's proposed IEP, finding that Annandale High School was not appropriate for Michael. Ms. DeBlaay appealed the decision to a state review officer who affirmed the hearing officer's decision in early 1987. DeVries then filed a complaint in district court that the court ultimately dismissed because, in the interim, another IEP had been developed to place Michael at the South County Vocational Center. See DeVries v. Fairfax County School Bd., 674 F.Supp. 1219 (E.D.Va.1987). The second IEP was also administratively contested by Ms. DeBlaay and affirmed by a local hearing officer and a state reviewing officer. This court subsequently remanded the case to the district court to consider the new IEP. See DeVries v. Spillane, 853 F.2d 264 (4th Cir.1988). In the meantime, DeVries filed another action in district court contesting the second IEP. The district court consolidated the cases, received the record from the administrative hearings, and, after considering the evidence de novo, found that Michael was properly placed at the South County Vocational Center. DeVries appeals.
 
 
 5
 A party's complaint under the Education for the Handicapped Act is subject to a two-step inquiry to determine: (1) whether a state has complied with the Act's procedural requirements; and (2) whether "the individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." Board of Education v. Rowley, 458 U.S. 176, 206-07, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982). The Supreme Court, while recognizing the importance of independent judicial review, admonished that "courts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy' " and that, "once a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States." Id. at 208, 102 S.Ct. at 3052 (citations omitted).
 
 
 6
 Devries does not contest the Board's compliance with the Act's procedural requirements but complains that the IEP does not provide the appropriate public education he is entitled to receive. He contends that the district court, in upholding the Board's proposed IEP, failed to consider the mainstreaming requirements of the Act. Simply stated, DeVries argues that the evidence shows that he would be better educated at Annandale High School and that, even if that were not so, the Board did not sustain its burden of proving that he could not receive the statutorily mandated "appropriate" education at Annandale.
 
 
 7
 Although we empathize with DeVries' desire to be placed in a public high school with his sister and other nonhandicapped children, we cannot agree that the facts demonstrate that he would receive an "appropriate public education" at that institution. We are persuaded that the district court fully considered the Act's mainstreaming requirements but correctly concluded that Michael could not be satisfactorily educated in regular classes even with the use of supplementary aids and services.
 
 
 8
 Mainstreaming of handicapped children into regular school programs where they might have opportunities to study and to socialize with nonhandicapped children is not only a laudable goal but is also a requirement of the Act. Specifically, the Act mandates that states establish
 
 
 9
 procedures to assure that, to the maximum extent appropriate, handicapped children ... are educated with children who are not handicapped, and that special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily....
 
 
 10
 20 U.S.C. Sec. 1412(5)(B).
 
 
 11
 The Act's language obviously indicates a strong congressional preference for mainstreaming. Mainstreaming, however, is not appropriate for every handicapped child. As the Sixth Circuit Court of Appeals stated:
 
 
 12
 The proper inquiry is whether a proposed placement is appropriate under the Act. In some cases, a placement which may be considered better for academic reasons may not be appropriate because of the failure to provide for mainstreaming. The perception that a segregated institution is academically superior for a handicapped child may reflect no more than a basic disagreement with the mainstreaming concept. Such a disagreement is not, of course, any basis for not following the Act's mandate. In a case where the segregated facility is considered superior, the court should determine whether the services which make that placement superior could be feasibly provided in a non-segregated setting. If they can, the placement in the segregated school would be inappropriate under the Act. Framing the issue in this manner accords the proper respect for the strong preference in favor of mainstreaming while still realizing the possibility that some handicapped children simply must be educated in segregated facilities either because the handicapped child would not benefit from mainstreaming, because any marginal benefits received from mainstreaming are far outweighed by the benefits gained from services which could not feasibly be provided in the non-segregated setting, or because the handicapped child is a disruptive force in the non-segregated setting.
 
 
 13
 Roncker v. Walter, 700 F.2d 1058, 1063 (6th Cir.) (citation omitted), cert. denied, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983).
 
 
 14
 The district court, in its findings of fact, stated:
 
 
 15
 Although Michael is now almost seventeen, his behaviors are child-like in many respects. His mannerisms and speech are rigid and stilted. He often becomes anxious, and is agitated by changes to his daily routine. He requires a relatively predictable environment. Michael has been described as a "fragile" child who is eager to please. His cognitive functioning is depressed with a measured IQ of 72. His academic functioning is also depressed: for example, his math and reading skills have been measured at the fourth grade reading level. He requires speech and language therapy and occupational (fine and visual motor) therapy. Socially, he has difficulty with interpersonal communication and relationships. He frequently behaves immaturely and can be demanding in his interaction with adults. When not in school, Michael participates in community activities such as the Boy Scouts and the church youth group. He also enjoys playing basketball at the County Recreation Center. Within these small continuing social groups, Michael relates well with the other teenagers, who accept him as a member.
 
 
 16
 During the summer of 1988, Michael worked at the Burger King fast food restaurant for three hours every other day. He commuted unassisted to his job by public transportation. Initially trained as a busboy, Michael was subsequently promoted to hamburger assembler upon successful completion of a training program. Michael was thorough and reliable in the execution of his duties. He acquired the necessary skills at an average rate, got along well with fellow employees, and responded well to rush hour crowds.
 
 
 17
 The court then evaluated the different programs and environments at Annandale High School and at the South County Vocational Center and concluded that "there is no appropriate peer group academically, socially or vocationally for Michael at Annandale." Even with an aide to assist him in comprehending and in communicating with teachers and students, the court found that "Michael would simply be monitoring classes" with nonhandicapped students at Annandale. Further, his disability would make it difficult for him to bridge the "disparity in cognitive levels" between him and the other students, he would glean little from the lectures, and his individualized work would be at a much lower level than his classmates. In contrast, the court found that the South County Vocational Center, located within a public high school, would provide a structured program with the one-to-one instruction that Michael requires, including appropriate instruction in academic subjects, vocational and social skills, community-based work experiences, and access to all the programs and facilities of the public high school.
 
 
 18
 In our view, the district court's conclusions encompassed the finding that Michael's education could not be accommodated at Annandale High School even with the use of supplementary aids and services. We think that the record adequately supports the court's final conclusion that Michael would not receive the "appropriate public education" at Annandale High School and that his placement at the South County Vocational Center represents this "appropriate public education" for him in the "least restrictive environment." DeVries next argues that, even if the district court correctly applied the provisions of the Education of the Handicapped Act, its decision should be reversed because it failed to consider section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794, which provides:
 
 
 19
 No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
 
 
 20
 He contends that the district court erred in excluding evidence offered by him to demonstrate a pattern and practice of discrimination by the Board. He asserts that the proffered evidence would have shown that no autistic child and only a small percentage of multi-handicapped and retarded children attend their home-base schools in the Fairfax County School District.
 
 
 21
 We, of course, are concerned by the exclusion of evidence that might show a violation of section 504. Evidence of a pattern and practice of discrimination might well be relevant in determining whether the Board's actions violate either the Education of the Handicapped Act or the Rehabilitation Act. Although compliance with the procedural safeguards of the Education of the Handicapped Act may in given cases demonstrate compliance with the Rehabilitation Act, section 504 violations conceivably could occur even when the procedural provisions of the former act have been followed.
 
 
 22
 Placement of handicapped children in special programs located in public schools, however, is not necessarily evidence of discrimination under either the Education of the Handicapped Act or the Rehabilitation Act. Section 1412(5) of the Education of the Handicapped Act expressly recognizes that, in appropriate circumstances, handicapped children may be placed in segregated programs. Similarly, "[d]isparate treatment does not necessarily constitute the invidious 'discrimination' outlawed by the Rehabilitation Act; disparate treatment that has a substantial justification is lawful." McKelvey v. Turnage, 792 F.2d 194, 203 (D.C.Cir.1986) (citations omitted), aff'd, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988); see also Southeastern Community College v. Davis, 442 U.S. 397, 405, 410, 99 S.Ct. 2361, 2366, 2369, 60 L.Ed.2d 980 (1979); Pinkerton v. Moye, 509 F.Supp. 107, 114 (W.D.Va.1981). The evidence that DeVries sought to introduce primarily would have disclosed that no autistic child and only a small percentage of multi-handicapped and retarded children attended their home-base schools. A review of the record persuades us that DeVries' putative statistical evidence had only nominal probative value. The Board complied with all procedural requirements of the Acts, and no other evidence suggested discrimination.
 
 
 23
 The district court excluded the proffered evidence on the grounds that the witness necessary to present the statistical evidence was not available on the day of the trial and that the evidence was cumulative and irrelevant. In our view, such evidence might be relevant in cases when a party alleges violations of both the Education of the Handicapped Act and the Rehabilitation Act, and, for that reason, delaying the trial in order to receive the statistical evidence might have been appropriate. The improbability of any substantial probative value enuring from that evidence, however, persuades us that no prejudicial error resulted from its exclusion.
 
 
 24
 In view of the above, the judgment of the district court is affirmed.
 
 
 25
 AFFIRMED.
 
 
 
 *
 Appellants are Michael DeVries and his mother, Marjorie A. DeBlaay. The Education of the Handicapped Act gives procedural rights to handicapped children and their parents. See 20 U.S.C. Sec. 1415. References to DeVries encompass his mother whenever appropriate