MEMORANDUM OPINION
 

 WILLIAMS, District Judge.
 

 Before the Court are Defendants’ Motions for Summary Judgment. The first of these Motions is brought by the Board of Education of Montgomery County, Paul L. Vance, Hiawatha Fountain, Raymond W. Bryant, and Mary Lee Phelps. The second Motion for Summary Judgment is that of the Maryland State Department of Education, Nancy S. Grasmick, and Richard J. Steinke. For the reasons that follow, the Court will grant these motions.
 

 Background
 

 This action surrounds the educational needs of Sean McGraw, who is now in his early twenties and who has a history of educational disabilities. Sean has been diagnosed with pervasive developmental disorder, mild mental retardation, and a substance abuse problem. Since he was in elementary school, Sean has received special educational services from Montgomery County, pursuant to individualized education programs (“IEP”s) prepared for Sean each year. In 1991, Sean’s mother Ms. Elliott agreed with the Montgomery County Public Schools (“MCPS”) that Sean’s needs could be met better if Sean were taken out of the local school system and placed at the Devereux School (“Devereux”) in Pennsylvania, which provides a private residential training and counseling to disabled students. Sean received these services, and held a part-time job through the program’s “Gateway” unit. In 1993, following Sean’s success in the Gateway program, Sean was transferred to Devereux’s “Career House,” through which he received training and therapeutic services,
 
 *251
 
 and secured an off-campus job in a retail store.
 

 However, Sean’s behavior at Devereux deteriorated in 1993, as substance abuse affected his school attendance and work performance. Further, Ms. Elliott became dissatisfied with Devereux, as she claimed that Sean was spending too much time working and not enough time in the classroom. In December of 1993, Ms. Elliott, the Board, and MCPS attempted to develop a community-based program for Sean. The evidence suggests that the Defendants made substantial efforts to secure such an arrangement for Sean that would prove satisfactory to Ms. Elliott, but Ms. Elliott would not accept any of the many referrals suggested by the Defendants. In April 1995, Ms. Elliott wrote to Mr. Steinke of MSDE requesting that he aid in obtaining records from Devereux and in developing a community based placement for Sean. MSDE responded to this request, contacting MCPS officials and receiving assurances that the records were being provided and that a new placement was being secured.
 

 Meanwhile, Sean’s substance abuse problems worsened. By April of 1995, these problems were so severe that Sean was transferred from Devereux to a substance abuse program at Suburban Hospital, with Ms. Elliott’s consent. Since Sean was over the age of eligibility under IDEA, had passed his Maryland functional tests, and had received a high school certificate, MCPS filed a motion in this Court to relieve them of the obligation to provide Sean with continuing services. This Court granted that Motion on August 26,1996.
 

 In part, the present litigation originates in actions that Plaintiffs brought before state and local authorities, pursuant to IDEA procedures. In early 1995, Plaintiffs filed a hearing request with MCPS, challenging MCPS’s provision of a free, appropriate public education for Sean. MSDE was not a party to these proceedings, as Plaintiffs made no allegations that MSDE had violated Sean’s rights under IDEA On March 16, 1995, a local hearing officer found that Sean should receive approximately one and one half years of compensatory services. Plaintiffs and MCPS both appealed this decision to the Maryland State Department of Education Hearing Review Board, in keeping with IDEA procedure. The state hearing panel concluded that MCPS had not denied Sean an appropriate education, and it consequently denied the requested compensatory services. As in the local proceeding, MSDE was not a party to this hearing.
 

 Plaintiffs brought the immediate action alleging that Defendants from MCPS and MSDE deprived Sean of a free appropriate public education in violation of the IDEA, § 504 of the Rehabilitation Act of 1973 (“§ 504”), the Americans with Disabilities Act (“ADA”), and § 42 U.S.C. 1983 (“1983”). With reference to MCPS, Plaintiffs appeal the decision of the state review board that Sean was not entitled to compensatory education. Plaintiffs argue that MCPS and related defendants have committed a host of violations of the IDEA requirements. Regarding MSDE, Plaintiffs argue that authorities from MSDE should have taken a more active role in providing her with assistance in Sean’s placement, and should have insured that adequate procedures were in place for implementation of IDEA’S provisions. The MCPS Defendants and the MSDE Defendants have filed Motions for Summary Judgment. The Court will address each of these in turn.
 

 Summary Judgment Principles
 

 Summary judgment is appropriate where there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). “Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.”
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted).
 
 See also Bland v. Norfolk and Southern Railroad Co.,
 
 406 F.2d 863, 866 (4th Cir.1969).
 

 
 *252
 
 In determining whether genuine and material factual disputes exist, resolution of which requires trial, the Court has reviewed the parties’ respective memoranda and the many exhibits attached thereto, construing all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Plaintiffs.
 
 Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Applying these principles to this case, the Court concludes that summary judgment for the Defendants must be granted.
 

 Discussion
 

 I.
 
 Motion for Summary Judgment by MCPS and Related Defendants
 

 On September 11,1996, the Board of Education of Montgomery County, Dr. Paul L. Vance, Dr. Hiawatha Fountain, Dr. Raymond W. Bryant, and Ms. Mary Lee Phelps brought a Motion for Summary Judgment. Plaintiffs’ claims against these Defendants allege violations of the IDEA, the ADA, and the Rehabilitation Act. The Court has reviewed the parties’ memoranda and exhibits regarding each of these allegations, and will address them in turn.
 

 The purpose of the IDEA is to provide disabled children with “some form of meaningful education” by providing funding and other assistance to the states for that purpose.
 
 In re Conklin v. Anne Arundel County School Board,
 
 946 F.2d 306, 308 (4th Cir.1991). The IDEA requires that disabled children receive a “free, appropriate public education” from birth to age 21.
 
 See
 
 20 U.S.C. Section 1400(c) and 34 C.F.R. Section 300.1, 300.123. The statute defines a “free, appropriate public education” as “special education and related services” that are provided at “public expense,” that “meet the standards of the State educational agency,” that include “an appropriate preschool, elementary, or secondary school education,” and that are “provided in conformity with the individualized education program.” 20 U.S.C. Section 1401(a)(18). The latter requirement, the individualized education program (“IEP”), is a “comprehensive statement of the educational needs” of the disabled student and the “specially designed' instruction and related services to be employed to meet those needs.”
 
 Burlington School Committee v. Department of Education of Massachusetts,
 
 471 U.S. 359, 368, 105 S.Ct. 1996, 2001-02, 85 L.Ed.2d 385 (1985).
 

 However, the IDEA does not require that “every special education program necessary to maximize each handicapped child’s potential be provided.”
 
 Burke County Board of Education v. Denton,
 
 895 F.2d 973, 980 (4th Cir.1990), citing
 
 Board of Education v. Rowley,
 
 458 U.S. 176, 199, 102 S.Ct. 3034, 3047, 73 L.Ed.2d 690 (1982). Rather, a state has complied with the free appropriate public education requirement of the IDEA when the education to which the student has access is “sufficient to confer some educational benefit upon the handicapped child.”
 
 Board of Education v. Rowley,
 
 458 U.S. 176, 200, 102 S.Ct. 3034, 3047-48, 73 L.Ed.2d 690 (1982).
 
 See also In re Conklin v. Anne Arundel County School Board,
 
 946 F.2d 306 (4th Cir.1991).
 

 Federal and state procedures are in place to ensure that parents are apprised of and involved in the implementation of their child’s IEP. These regulations include “vocational education” and “vocational training” in their definitions of “special education” and “transition services.”
 
 See
 
 34 C.F.R. Sections 300.17 and 300.18. Further, the federal regulations limit the accountability and liability of teachers and administrators who “make good faith efforts to assist the child in achieving the goals and objectives listed in the IEP.” The regulations state that “the Act does not require that any agency, teacher, or other person be held accountable if a child does not achieve the growth projected in the annual goals and objectives.” 34 C.F.R. Section 300.350 and Note.
 

 The IDEA also provides that if a party is dissatisfied with the result of a due process hearing, that party may bring a civil action in federal district court “with respect to the complaint presented.” The U.S. Supreme Court has instructed reviewing courts to “make two inquiries.” First, “Did the school board procedurally comply with the [IDEA] and its implementing regulations?” and second, “Is the IEP reasonably calculated to provide educational benefits to the child?”
 
 Spielberg v. Henrico County Public Schools,
 
 
 *253
 
 853 F.2d 256, 258 (4th Cir.1988). If the district court answers these questions in the affirmative, this means that the state “has complied with the obligations imposed by the [IDEA] and the courts can require no more.”
 
 Board of Education v. Rowley,
 
 458 U.S. at 207, 102 S.Ct. at 3051.
 

 In the instant ease, the record clearly shows that the Defendants complied with the requirements of the IDEA Ms. Elliott alleges that Sean’s progression at Devereux School from the Gateway program to the Career House program was tantamount to a change in placement for which she should have received notice. However, as the Maryland State Department of Education Hearing Review Board has held, Sean’s movement within the Devereux School does not constitute a fundamental change in his program or IEP.
 
 See
 
 Decision of the Maryland State Department of Education Hearing Review Board, dated June 13 and 14, 1995. Moreover, the facts clearly indicate that Ms. Elliott did receive notice of Sean’s movement from Gateway to Career House.
 
 See
 
 Deposition of Kathleen Elliott, p. 56, lines 2-17. Likewise, it is clear that when Ms. Elliott did request that Sean be returned to his home community (though not his home), Defendants made strong efforts to find such a placement for Sean and to address his substance abuse concerns. Ms. Elliott admits that she rejected all of the Defendants’ proposals, leaving the Defendants unable to comply with her request. As Defendants point out in their Motion, Ms. Elliott in her Complaint and Answers to Interrogatories faults Defendants “for not removing Sean from the Devereux program quickly enough, yet, in the same breath, she further faults the Defendants for ‘illegally’ removing Sean from Devereux “when a state level review was pending.’” Defendants’. Motion at 21.
 

 Likewise, the Defendants clearly meet the second factor of the
 
 Spielberg
 
 inquiry, as Sean’s IEPs were “reasonably calculated to provide educational benefits to the child.” Ms. Elliott takes issue with Sean’s IEPs for the 1993-1994 and 1994-1995 school years. However, the record clearly demonstrates that Ms. Elliott was involved in the preparing both of these IEPs. Furthermore, the evidence shows that any delay in their preparation and implementation was caused by Ms. Elliott herself, as she walked out of an IEP meeting and repeatedly refused to sign the IEPs until further meetings were held. Moreover, even setting aside Ms. Elliott’s role in the IEPs, the record clearly shows that contrary to Ms. Elliott’s allegations, the IEPs were implemented and did contain transition goals.
 
 See
 
 Decision of the Maryland State Department of Education Review Board dated June 13, 1995, pp. 11-12.
 

 Ms. Elliot also asserts that Devereux developed its own IEPs for Sean, which were incompatible with those developed by Defendants. However, the Devereux “Individualized Education Program” did not represent such a departure from Defendants’ IEP in any instance, but rather, it merely provided an additional means of documenting Sean’s development, which is acceptable under IDEA. Furthermore, Ms. Elliott was invited to all Devereux meetings concerning Sean’s program, and received regular written updates on his progress. Thus, her allegations that she was excluded from this process prove to be without merit.
 

 Finally, the evidence clearly contradicts Plaintiffs’ other allegations as well. Defendants did indeed provide the triennial evaluations that the law required to be completed in 1994 and 1995.
 
 See
 
 Affidavit of David Cross. Likewise, Plaintiffs’ own admissions reveal that she did indeed have access to Sean’s records in as timely a manner as possible. For these reasons, the Court concludes that the Defendants did not violate the IDEA.
 

 Plaintiffs also allege that the Defendants violated Plaintiffs’ rights under Section 504 of the Rehabilitation Act and under the ADA. The Court will discuss each of these laws in turn, and will then address Plaintiffs’ claims under them. Section 504 of the Rehabilitation Act precludes recipients of federal funds from discriminating against “disabled” individuals.
 
 See
 
 29 U.S.C. 794(a). The ADA extends this rule, to provide disabled people with greater access to public services and facilities not receiving federal funds. The
 
 *254
 
 operative language of Title II of the ADA and Section 504 of the Rehabilitation Act are substantially the same, as are the substantive criteria for determining liability under the two statutes.
 
 Myers v. Hose,
 
 50 F.3d 278 (4th Cir.1995).
 

 The relevant portion of Section 504 of the Rehabilitation Act provides that No otherwise qualified person with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. Section 794(a) (as amended 1992).
 

 Plaintiffs’ ADA claim falls under Title II of the ADA, which states in relevant part:
 

 “[N]o qualified person with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.” 42 U.S.C. Section 12132.
 

 Both the Rehabilitation Act and the ADA address instances of discrimination, and consequently, any claim under either of these must be grounded upon evidence of discrimination.
 
 See, e.g., DeVries By DeBlaay v. Fairfax County School Board,
 
 882 F.2d 876 (4th Cir.1989).
 

 Plaintiffs have not presented evidence suggesting that the Defendants intentionally denied benefits to Sean for a discriminatory reason. However, Plaintiffs’ allegations in this regard are merely reformations of her allegations regarding perceived violations of the technical provisions of the IDEA, discussed above. Plaintiffs provide no evidence that Defendants intentionally discriminated against them, or denied them services, because of Sean’s disability. Indeed, Defendants provided Plaintiffs with a broad range of educational and vocational services from Sean’s entering elementary school through his receipt of a high-school certificate at age twenty-one, as is explicated in the Affidavit of David Cross and the Administrative Record. Because Plaintiffs have failed to present any evidence to support her allegations, and because this evidence clearly mitigates against them, Plaintiffs’ claims under the Rehabilitation Act and the ADA cannot sustain Defendants’ Motion for Summary Judgment.
 

 Plaintiffs also allege that the Defendants violated 42 U.S.C. § 1983. Under Section 1983, every person in the United States who, under color of state law, deprives any person of federal rights is liable to the party so injured. Accordingly, violations of this statute require the violation of a federal right. However, because the Court has determined that the Plaintiffs have no viable claim under the IDEA or the federal disability statutes, Plaintiffs have no such federal rights violation to assert in support of their claim under 42 U.S.C. § 1983. Consequently, Plaintiffs cannot sustain their Section 1983 claim.
 

 II.
 
 Motion for Summary Judgment by MSDE and Related Defendants
 

 As
 
 compared with Plaintiffs’ allegations against the above-discussed defendants, Plaintiffs’ allegations against the Maryland State Department of Education and related individuals (“the State Defendants”) are relatively narrow. Plaintiffs’ Complaint alleges that the State Defendants should have provided more assistance to Ms. Elliott in her dealings with MSDE concerning IDEA. Complaint at 29. Plaintiffs also allege that MSDE “has knowledge that MCPS does not have procedures in place to implement § 504 of the ADA,” and that by passing funds to MCPS despite such knowledge, MSDE is violating § 504. Complaint at 32. Plaintiffs ask the Court to enjoin MSDE from passing any federal funds to MCPS until the latter has complied with § 504 of the ADA.
 

 Plaintiffs’ allegations under IDEA are not properly before the Court, as Plaintiffs have failed to exhaust administrative remedies against the State Defendants. IDEA provides a detailed scheme under which parents may challenge the conduct of a public education agency in meeting its obligations to a disabled student. This system involves a due process hearing before an impartial hearing officer, § 1415(b), and a right of appeal of the administrative hearing to federal court, § 1415(e). MSDE was not a party
 
 *255
 
 to the administrative proceedings that are on appeal in this Court, no claims were raised against the State defendants in those proceedings, and thus no issues regarding the State Defendants’ conduct should be included in an appeal in this case.
 

 The Fourth Circuit has held that exhaustion of these administrative requirements is necessary, and that federal action is premature where plaintiffs have not exhausted state administrative remedies.
 
 Scruggs v. Campbell,
 
 630 F.2d 237, 239 (1980). Further, the statute itself makes clear that a plaintiff cannot circumvent IDEA’S exhaustion requirement by filing parallel claims under § 504 or § 1983 as Plaintiff has. 20 U.S.C. § 1415(f) states that in cases filed under § 504 or other civil rights acts, “the procedures under [§ 1415] shall be exhausted to the same extent as would be required had the action been brought under this subehapter.”
 

 Plaintiffs argue that this exhaustion requirement should not apply to the State defendants, because their “administrative claims ran against both county and state defendants.” Plaintiffs’ Opposition at 35. However, Plaintiffs did not even attempt to name the State Defendants as parties at the administrative proceedings, and Plaintiffs have presented no evidence from the administrative record that their claims against the State Defendants were raised in the administrative proceedings.
 

 Furthermore, this ease clearly falls outside the exceptions to the exhaustion requirement. Plaintiffs cannot successfully argue that it would have been futile for them to raise their complaint against the State in the prior administrative hearings.
 
 Honig v. Doe,
 
 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988). Likewise, this was not an emergency situation requiring immediate resort to federal court, as Plaintiffs did pursue fulfill the exhaustion requirements in their claims against the other Defendants.
 
 See Komninos v. Upper Saddle River Bd. of Educ.,
 
 13 F.3d 775 (3d Cir.1994). Finally, the fact that the State defendants were not even parties in the administrative proceedings demonstrates that Plaintiffs’ complaints before this Court differ from those at the administrative hearing in aspects beyond merely the introduction of additional evidence.
 
 DeVries v. Spillane,
 
 853 F.2d 264 (4th Cir.1988) (re-exhaustion of administrative remedies not required where complaint remained the same throughout all administrative and judicial proceedings, except that plaintiffs contemplated presentation of additional evidence in federal court). For these reasons, Plaintiffs’ claim against the State Defendants regarding IDEA cannot sustain this Motion for Summary Judgment.
 

 Plaintiffs’ other allegation against the State Defendants surrounds § 504. As discussed above, Plaintiffs allege that the State Defendants had knowledge of violations of § 504, and were therefore in error to allow the expenditure of federal funds to sustain such violations. As the Court has found, no such violations of § 504 were occurring. Even if the Court had not so found, however, Plaintiffs’ claim would still be without merit. While IDEA does require the state to monitor recipients of federal funds, neither § 504 nor the ADA include such requirements. Indeed, § 504 regulations expressly require that each recipient of federal funds (including the school system itself) establish a self-evaluation program, with grievance proceedings that are appealable directly to the federal Department of Education. 34 C.F.R. § 104.6 and § 104.7(b). Thus, it rests with the school system, and not with the State Defendants, to monitor programs for compliance with § 504. Consequently, Plaintiffs’ claims against the State Defendants in this regard are without merit.
 

 Conclusion
 

 For the reasons stated above, the Court will grant the Motion for Summary Judgement filed by the Board of Education of Montgomery County, Paul L. Vance, Hiawatha Fountain, Raymond W. Bryant and Mary Lee Phelps; as well as the Motion for Summary Judgment filed by the Maryland State Department of Education, Nancy S. Grasmick, and Richard J. Steinke. A separate Order consistent with this Opinion will issue.
 

 
 *256
 

 ORDER
 

 In accordance with the Memorandum Opinion, it is this 23rd day of January, 1997, ORDERED:
 

 1. That the Motion for Summary Judgment filed by Defendants Board of Education of Montgomery County, Paul L. Vance, Hiawatha Fountain, Raymond W. Bryant, and Mary Lee Phelps BE, and the same hereby IS, GRANTED;
 

 2. That the Motion for Summary Judgment filed by Defendants Maryland State Department of Education, Nancy S. Grasmick, and Richard Steinke BE, and the same hereby IS, GRANTED;
 

 3. That the Clerk of the Court CLOSE this case; and
 

 4. That the Clerk of the Court mail copies of this Order and the Memorandum Opinion to all counsel of record.