Luke DeLULLO, a minor By his
parents and next friends, Cindy
and Daniel DeLULLO,

and

Cindy and Daniel DeLullo, Plaintiffs,

v.

JEFFERSON COUNTY BOARD
OF EDUCATION,

and

B. Judson Romine (officially) Superintendent, Jefferson County
Schools, Defendants.

Civil Action No. 3:97–CV–8.

United States District Court,
N.D. West Virginia.

May 21, 1998.

---

James T. Kratovil, Kratovil & Kratovil, Charles Town, WV, Matthew B. Bogin, Holly L. Parker, Helen Goff Foster, Bogin & Eig, Washington, DC, for plaintiffs.

Nancy W. Brown, Steptoe & Johnson, Clarksburg, WV, for defendants.

### MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

The above-styled matter is pending before the Court for a decision concerning the parties' cross-motions for summary judgment. After considering oral argument and the parties' memoranda of law, the Court is of the opinion that summary judgment should be granted in favor of the defendant.

### I. STATEMENT OF FACTS

Plaintiffs Cindy and Daniel DeLullo, as parents and next friends of Luke Delullo ("Luke"), filed this action on behalf of themselves and on behalf of Luke pursuant to the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act ("Section 504"), 42 U.S.C. § 1983 ("Section 1983") and West Virginia Law. This action sought declaratory relief and injunctive relief requiring the Jefferson County Board of Education ("Board") to pay for Luke DeLullo to be placed at Riverview School. This school is a private out-of-state residential facility selected by the plaintiff. Plaintiffs also sought their attorney fees and costs.

Defendants, Jefferson County Board of Education and B. Judson Romine, as Superintendent, are responsible for the school system in Jefferson County. This school system is located within the Northern District of the United States District Court for West Virginia.

Luke is now fifteen (15) years old and has been home schooled by his parents since March 18, 1996. He has been diagnosed by his neuropsychologist as either borderline mildly mentally retarded or learning disabled. As a result of his disabilities, Jefferson County Schools has determined that Luke is eligible for special education.

Luke's parents requested a due process hearing on August 9, 1996. The parents were seeking entitlement to private school placement for Luke at public expense. In a decision favorable to the Board, the Due Process Hearing Officer Sheehan denied the parents' request for public payment of a private placement. She also ordered the Board to conduct two additional evaluations and to hold an IEP meeting to complete the unfinished IEP.

Jefferson County Schools acknowledged the parents' right to home school their child and, by letter to the parents, offered to provide special education and related services. This included occupational therapy for Luke at his home school, Charles Town Junior High School. The same letter noted that homebound placement might be available pending receipt of proper medical documentation.

Although having this invitation and being provided with the proper forms, Luke's parents never made a request for homebound placement. Luke was home schooled at the time of the due process

hearing. He continued to be home schooled through this litigation.

During the 1995–96 school year immediately prior to being home schooled by his parents, Luke was a sixth (6) grade student. The Board determined that Luke was eligible for special education and related services as learning disabled. He received these services at Wright Denny Elementary School, located in Jefferson County, West Virginia.

No evidence was introduced at the Due Process hearing to suggest that Luke's 1995–1996 IEP was improper. All members of the IEP Committee, except the parent, agreed with the IEP. The first IEP meeting was held on October 2, 1995. It was reconvened on both October 16, 1995 and January 23, 1996. Throughout the hearings, the parent still maintained her disagreement. As part of its efforts to create this IEP, the IEP team, which had previously recommended additional evaluations, undertook a triennial evaluation of Luke. This was explained to the parents by letter dated October 20, 1995. The parent, in a letter to the Superintendent dated January 26, 1996, requested that the Board cease further testing of Luke because of her disagreement with the IEP.

In reference to IEP for 1996–1997 School Year, by letter dated June 5, 1996, Luke's parents complained that they were not notified about the triennial review. On June 12, 1996, the Board's Director of Special Education set in motion the process to complete Luke's IEP for the upcoming school year by scheduling an IEP meeting for June 20, 1996. The letter also requested permission to complete Luke's triennial review over the summer months. A notice of triennial evaluation was enclosed.

Thereafter, the parents rescheduled Luke's IEP meeting two times, ultimately agreeing to attend on July 3, 1996. At that meeting, the parents requested several tests which they were to schedule by calling the school's psychologist. These tests were not scheduled, even though the

school psychologist wrote to the parents on July 19, 1996 and spoke to the parents on July 24, 1996. The psychologist noted: "Made effort to confirm appointment. A variety of issues were raised resulting in no confirmed appointment."

On August 6, 1996, the Board again requested an IEP meeting. The parents then said this meeting had to be rescheduled. On August 9, 1996, they filed for due process. Thereafter, the Board proposed September 20, 1996 as an IEP meeting date. In the interim, the Board gave Luke an Occupational Therapy Motor Evaluation and an Educational Assessment.

On September 20, 1996, an IEP meeting was held. The IEP was not completed because the IEP Committee wanted a speech/language evaluation to be performed before the goals and objectives were finalized. On October 1, 1996, the parents were notified of the tests that the speech pathologist wanted to administer. The Board requested that the parents contact the speech pathologist to set up an appointment for testing. The parents never called to set up the evaluation.

Luke continued to be home schooled. As a home schooled student, the Board had no access to Luke to perform evaluations unless the parents cooperated.

Concerning private school placement, Due Process Hearing Officer Sheehan made several finding of facts. First, she held that the parents submitted no evidence of any type to describe the out-of-state private school placement that they were seeking. Second, she held that the parents submitted no evidence to show why the private school placement was appropriate for Luke.

In accordance with the decision of Due Process Hearing Officer Sheehan, the Board conducted a speech and language evaluation and an occupational therapy evaluation in January, 1997. In accordance with this Court's Order entered Sep-

tember 16, 1997, the Board notified Luke's parents that no further evaluations were required prior to the IEP meeting. As part of that letter, Luke's parents were provided with copies of the January 21, 1997 speech/language evaluation, the January 22, 1997 occupational therapy evaluation, the May 21, 1997 achievement evaluation and the May 21, 1997 career interest inventory.

Thereafter, Luke's parents provided the Board with copies of a Comprehensive Speech and Language Assessment from the Kamara Center dated September 24, 1997, an Initial Occupational Therapy Consultation Report from Linda Nolan dated October 14, 1997, and a Statement of Appropriate Placement from Laura Solomon dated October 15, 1997. Luke's parents also provided the Board's counsel with copies of brochures from Riverview School and from various other schools with programs they claim are similar to that of Riverview.

On November 13, 1997, an IEP meeting was held pursuant to this Court's order. An IEP was developed. The handwritten version was submitted directly to the Court by Luke's attorney on November 14, 1997. The typed version being submitted to the Court by the Board's counsel on November 21, 1997.

A hearing was held before this Court on November 25, 1997, to review the IEP. The Board submitted that the proposed IEP could provide Luke with a Free Appropriate Public Education. This was based on several findings by Due Process Hearing Officer Sheehan. First, as the Due Process Hearing Officer concluded, the Board has the capacity to provide full-time special education in a self-contained classroom and can accommodate a student with a need for a classroom of only 3–4 students per teacher. Second, as the Due Process Hearing Officer concluded, the Board has separate special education classes for both learning disabled students and mildly mentally impaired students. Further, a willingness was expressed to

provide or develop pre-vocational and/or vocational programs for Luke if such services were found to be required.

The Board tendered to the Court proposed class schedules for Luke at both Charles Town Junior High School and Harper's Ferry Junior High School. Both schools have certified special education teachers teach in the area of mentally impaired. Per the transcript from the November 13, 1997 IEP meeting, the IEP Committee utilized the information from Dr. Stixrud's, Dr. Kamara's and Ms. Nolan's evaluations. The IEP committee also reviewed Dr. Solomon's statement of appropriate placement in the development of Luke's IEP. Because Dr. Kamara's evaluation indicated that Luke's major disability was a result of a language disorder, the IEP Committee's Language Pathologist, Nancy Beitz, prepared a chart to show the participants that Luke's language skill areas necessitated that Luke's IEP emphasize academic skills and the use of language therapy as a related service.

As the November 13, 1997 transcript reveals, Luke's mother refused to respond to requests for information about Luke's current level of accomplishments. Since Luke's mother has been responsible for Luke's educational program at home, the committee sought input from her to get a clear picture of his progress for purposes of establishing goals and objectives.

Similarly, as demonstrated in the transcript provided by the parent during the preceding IEP meeting of March 25, 1997, the parent refused to provide specific information about Luke's progress at home other than to say that he was being provided a general curriculum. A copy of this transcript was provided to the court by plaintiff's counsel on December 9, 1997.

No evidence has been submitted to show that the cost of the parental placement is reasonable. The IEP Committee considered whether residential placement was appropriate to meet Luke's educational needs and concluded that it was not be-

cause it was not the least restrictive environment. The Board utilized all due efforts in developing the IEP of November 13, 1997 and considered the goals and objectives discussed at the September 20, 1996 IEP meeting.

## II. DISCUSSION

The Court has jurisdiction over this civil action under 20 U.S.C. § 1400. As well, venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2).

■ Parental disagreement, though important to recognize, does not defeat the propriety of an IEP Committee's decisions. *Rouse v. Wilson*, 675 F.Supp. 1012 (W.D.Va.1987). As well, 20 U.S.C. § 1415(e)(2) is not an invitation for district courts to substitute their own notions of sound educational policy for those of the school authorities which they review. *Hartmann by Hartmann v. Loudoun County Bd. of Educ.*, 118 F.3d 996 (4th Cir.1997) *cert. denied* 522 U.S. 1046, 118 S.Ct. 688, 139 L.Ed.2d 634 (1998).

■ Administrative findings in an IDEA case are considered *prima facie* correct. If the district court is not going to follow them, it is required to explain why it does not. *Id.* at 1001; *Doyle v. Arlington County School Bd.*, 953 F.2d 100, 105 (4th Cir.1991). The purpose of IDEA is to assist the states in providing educational programs for disabled children, not to displace the primacy of states in the field of education. *Board of Educ. of the Hendrick Hudson Central School Dist./Westchester County v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The IDEA incorporates the state's educational standards. *Schimmel by Schimmel v. Spillane*, 819 F.2d 477 (4th Cir.1987).

■ *Rowley* admonished district courts that the IDEA does not require furnishing of every special service necessary to maximize each handicapped child's potential. *Hartmann*, 118 F.3d at 1001. The IDEA does not require special education service

providers to have every conceivable credential relevant to every child's disability. *Id.*

■ The case law does not address the type of prospective relief being sought in this case. Both *Florence County School Dist. Four v. Carter By and Through Carter*, 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) and *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) authorize retrospective reimbursement of a parental placement. The second part of the *Carter/Burlington* test requires evidence to show that the parental placement is appropriate (*i.e.*, that it is reasonably calculated to lead to educational benefit). Further, the cost of the parental placement must be reasonable. Given the absence of allegations or evidence of bad faith on the part of the Board, a plaintiff may not recover monetary damages under Section 504. *Barnett v. Fairfax County School Bd.*, 721 F.Supp. 755, 756 (E.D.Va.1989).

■ The parents' proposed residential placement at Riverview School ignores the IDEA's requirement that, to the greatest extent possible, children are to be educated in the least restrictive environment. 20 U.S.C. § 1412(5)(B). *See also* 34 C.F.R. § 300.550(b)(2); *DeVries By DeBlaay v. Fairfax County School Bd.*, 882 F.2d 876 (4th Cir.1989); *Roncker On Behalf of Roncker v. Walter*, 700 F.2d 1058 (6th Cir.1983). Parents are entitled to reimbursement for private school placement only if a federal court "concludes both that the public placement violated IDEA, and that the private school placement was proper under the Act." *Carter*, 510 U.S. at 15, 114 S.Ct. 361. The United States Supreme Court has said that "total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable." *Id.* The Courts have also recognized there is the potential in special education cases to abuse the system and the advocate should

not have a blank check to spend the public purse. *P.T.P., IV by P.T.P., III v. Board of Educ. of the County of Jefferson,* 200 W.Va. 61, 488 S.E.2d 61 (1997). Equitable considerations are relevant for the court to consider in fashioning relief. 20 U.S.C. § 1415(e)(2); *Burlington,* 471 U.S. at 374, 105 S.Ct. 1996. The IDEA contemplates that a child's education will be provided, where possible, in regular public schools with ´children participating with non-handicapped children. *Id.*

■ A district court has discretion to deny a request for additional evidence. The district court may properly exclude evidence which was not before the Due Process Hearing Officer if such evidence could have been available at the time of the hearing. *Susan N. v. Wilson School Dist.,* 70 F.3d 751 (3rd Cir.1995).

### III.   CONCLUSION

The Court is of the opinion that, based upon the facts and law, summary judgment should be granted in favor of the defendants. The Court therefore

1. **ORDERS** that the defendants' motion for summary judgment (Document Number 14) be **GRANTED;**

2. **ORDERS** that plaintiffs are not prevailing parties for purposes of obtaining reimbursement of their attorneys fees and costs in connection with this case;

3. **ORDERS** that all claims herein are **DISMISSED** with prejudice and that the Clerk remove this case from the active docket of this Court.